**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**DAVID ROBINSON, JR.,**

                          **Plaintiff,**              **1:09-cv-455**
                                                      **(GLS/RFT)**

              **v.**

**THE STATE OF NEW YORK**
**et al.,**

                          **Defendants.**
_____
**APPEARANCES:**                          **OF COUNSEL:**

**FOR THE PLAINTIFF:**
David Robinson, Jr.
Pro Se
134-34 241 St.
Rosedale, NY 11422

**FOR THE DEFENDANTS:**
HON. ERIC T. SCHNEIDERMAN          C. HARRIS DAGUE
New York State Attorney General    Assistant Attorney General
The Capitol
Albany, NY 12224

**Gary L. Sharpe**
**Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

        Plaintiff _pro se_ David Robinson, Jr. commenced this action against

defendants New York State, George Alexander, Michael Fork, Ms.

Benjamin, and Mr. Fernandez, alleging that the imposition of certain parole conditions violated his rights under the constitution and state and federal statutes.  (*See* Compl., Dkt. No. 1.)  A number of Robinson's claims were dismissed by this court in a March 26, 2010 Memorandum-Decision and Order, and his remaining claims were dismissed on June 22, 2011, following a successful motion for summary judgment brought by defendants.  (*See* Dkt. Nos. 43, 65.)  Upon review of both decisions, the Second Circuit affirmed dismissal of Robinson's claims with the exception of his Fourteenth Amendment due process and equal protection claims seeking equitable relief from "the imposition of a special parole condition requiring [him] to seek permission to possess a driver's license and operate a motor vehicle."[1]  (Dkt. No. 72 at 3.)  Presently before the court is defendants' motion for summary judgment as to those limited claims.[2]  (*See* Dkt. Nos. 57, 72.)  For the reasons that follow, the motion is granted.

_____

[1] The Second Circuit deemed abandoned Robinson's claims pertaining to "the special condition requiring him to obtain permission before using a computer with internet access."  (Dkt. No. 72 at 3 n.2.)

[2] In addition to their original motion papers, the parties were permitted to, and did, supplement the record in light of the Second Circuit's Mandate.  (*See* Dkt. Nos. 74, 75.)

## II. **Facts**[3]

Following a May 13, 2005 conviction for criminal possession of a weapon in the second degree and assault in the third degree in New York Supreme Court, New York County, Robinson was sentenced to a determinate term of five years incarceration and a concurrent one-year term of incarceration, as well as a five-year period of post-release supervision. (*See* Defendants' Statement of Material Facts (SMF) ¶ 1, Dkt. No. 57, Attach. 4; Dkt. No. 57, Attach. 2 at 7.) On October 24, 2008, Robinson was released on parole, and began serving a five-year period of supervised release under the jurisdiction of the New York State Division of Parole. (*See* Defs.' SMF ¶¶ 3-4; Dkt. No. 57, Attach. 2 at 11.) In accordance with his post-release supervision, Robinson agreed to abide by

---

[3] Despite being notified by both defendants and the court of the consequences of failing to respond to defendants' motion for summary judgment in accordance with N.D.N.Y. L.R. 7.1, (*see* Dkt. No. 57, Attach. 1; Dkt. No. 58), and being granted an extended period of time within which to comply with that rule, Robinson sought only to incorporate as a response his pleadings and the motion papers and statement of material facts proffered by him in relation to his previously-denied motion for summary judgment, (*see* Dkt. Nos. 36, 37; Dkt. No. 59 ¶ 3). Both defendants and Robinson did, however, file supplemental submissions as permitted by the court's November 9, 2012 Text Only Order. (*See* Dkt. Nos. 74, 75.) In any event, the court discerns no material factual disputes which impede its ability to address fully the pending motion.

certain general and special conditions of release.  (*See* Defs.' SMF ¶¶ 5-6;

Dkt. No. 57, Attach. 2 at 11.)

In March 2009, Robinson was assigned to the Queens III parole

bureau, and, upon meeting with his parole officer, was issued additional

special conditions.  (*See* Defs.' SMF ¶¶ 6-7.)  The special condition at

issue here ("license and vehicle condition"), which was imposed on

Robinson on March 18, 2009, states:

> **Driver's License/Motor Vehicle Operation:** In accordance with
> Rule #13 of the Conditions of Release, I will <u>NOT</u> have in my
> possession or apply for or renew a driver's license nor will I own,
> purchase, rent, register or operate a motor vehicle without the
> knowledge and explicit permission of my Parole Officer, and if
> granted permission to possess a driver's license, I understand
> that this permission may be revoked at any time.

(Dkt. No. 57, Attach. 2 at 13; *see* Defs.' SMF ¶ 8.)  With the exception of

"extremely limited circumstances," the license and vehicle condition is

imposed on all parolees under the supervision of the Queens III bureau.[4]

(Defs.' SMF ¶¶ 9-10.)  While supervision of Robinson was transferred to

---

[4] Although it is unclear with what frequency or duration Robinson's
license and vehicle privileges have actually been revoked, (*see* Compl. ¶
14; Dkt. No. 1, Attach. 1 at 11; Dkt. No. 75 at 1-2; Dkt. No. 75, Attach. 1 at
5-12), it is the constitutional propriety of the imposition of the special
condition that is at issue, not the nuances of its enforcement, (*see, e.g.*,
Dkt. No. 65).  As such, this open question does not hinder the court's
ability to resolve defendants' motion.

the Queens I bureau for approximately one year, between late 2011 and late 2012, he is presently under the supervision of the Queens III bureau. (*See* Dkt. No. 75, Attach. 1 ¶¶ 3-11; *Id.* at 5-12.)

### III.  Standard of Review

The standard of review under Fed. R. Civ. P. 56 is well established and will not be repeated here.  For a full discussion of the standard, the court refers the parties to its decision in *Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011).

### IV.  Discussion

### A.    Due Process

The Due Process Clause of the Fourteenth Amendment encompasses both a substantive and a procedural component which, together, protect "persons against deprivations of life, liberty, or property." *Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012) (internal quotation marks and citation omitted); *see Zinermon v. Burch*, 494 U.S. 113, 125 (1990).  As noted in this court's March 26, 2010 Order, because the discretion to impose special conditions of release in New York is entrusted to the Board of Parole, an authorized representative of the Division of Parole, or a parole officer, and is not reviewable if done in accordance with

law, *see* N.Y. Exec. Law § 259-i(5) (McKinney 2010); N.Y. Comp. Codes R. & Regs. tit. 9, §§ 8003.2(l), 8003.3, parolees do not have a protected liberty interest in being free from such conditions, (*see* Dkt. No. 43 at 23) (citing *McCloud v. Kane*, 491 F. Supp. 2d 312, 317 (E.D.N.Y. 2007)); *see also Cusamano v. Alexander*, 691 F. Supp. 2d 312, 318-19 (N.D.N.Y. 2009).  In light of this principle, Robinson's due process claim is limited to review of "the substance of the special condition[] at issue here and the basis for [its] imposition."  (Dkt. No. 43 at 23) (citing *Boddie v. N.Y. State Div. of Parole*, 285 F. Supp. 2d 421, 428-29 (S.D.N.Y. 2003)).

The "discretionary imposition of special conditions is 'not subject to judicial review in the absence of a showing that the [Parole Board] or its agents acted in an arbitrary and capricious manner.  Review of conditions of parole are generally matters for state courts.'"[5]  *Walker v. Mattingly*, No. 09-CV-845-JTC, 2012 WL 1160772, at *6 (W.D.N.Y. Apr. 5, 2012) (quoting *Pena v. Travis*, No. 01 Civ.8534, 2002 WL 31886175, at *9 (S.D.N.Y. Dec.

---

[5] Robinson indicates in his Complaint that he previously sought a declaratory judgment pertaining to his conditions of release in New York Supreme Court, Ulster County.  (*See* Compl. ¶¶ 31, 60.)  The disposition of that action or petition is unclear, however, and, while defendants assert generic res judicata and collateral estoppel defenses in their Answer, they did not pursue those defenses in their motion papers.  (*See* Dkt. No. 18 ¶ 12; Dkt. No. 28, Attach. 5; Dkt. No. 41; Dkt. No. 57, Attach. 3; Dkt. No. 75.)

27, 2002)); *see Graziano*, 689 F.3d at 115 ("Plaintiffs' minimal due process

rights are 'limited to not being denied parole for arbitrary or impermissible

reasons.'" (quoting *Boddie*, 285 F. Supp. 2d at 428)); *In re M.G. v. Travis*,

236 A.D.2d 163, 167-69 (1st Dep't 1997) (reviewing special conditions

under arbitrary and capricious standard as well as for both rational and

reasonable relation to legitimate considerations such as reduced recidivism

and past conduct); *but see Gordon v. Alexander*, 592 F. Supp. 2d 644, 653

(S.D.N.Y. 2009) ("Where no process at all is required, the government

decision-maker may use absolute discretion-even the discretion to render

decisions on arbitrary or irrational bases-without violating constitutional due

process requirements.").[6]  "[O]nly the most egregious official conduct can

be said to be 'arbitrary in the constitutional sense.'"  *Cnty. of Sacramento v.*

*Lewis*, 523 U.S. 833, 846 (1998) (quoting *Collins v. City of Harker Heights,*

*Tex.*, 503 U.S. 115, 129 (1992)); *see Graziano*, 689 F.3d at 116.

The discretionary imposition of the special condition at issue here

---

[6] Because neither the issuance and maintenance of a driver's
license nor the right to drive a vehicle give rise to a fundamental right,
strict scrutiny of the special condition at issue is not warranted.  *See*
*Yandow v. Kronau*, No. 1:09-cv-903, 2011 WL 282449, at *5 (N.D.N.Y.
Jan. 24, 2011); *see also Williams v. N.Y. State Div. of Parole*, 71 A.D.3d
524, 526 (1st Dep't 2010) (suggesting that strict scrutiny may apply where
a special condition burdens a fundamental right).

clearly does not constitute "the most egregious official conduct."  *See Cnty. of Sacramento*, 523 U.S. at 846.  The license and vehicle condition was imposed in order to advance the governmental goals "of protecting society from the threat of recidivism from parolees and helping the parolee avoid situations wherein he would be apt to re-offend."  (Defs.' SMF ¶ 11.)  The special condition further permits Robinson's parole officer to monitor his movement and access to transportation "in order to ensure [Robinson's] compliance with the terms of [his] parole[, his] positive reintegration into society," and his "work and social activities."  (*Id*.)  Notably, the license and vehicle condition does not operate as an absolute ban.  (*See id*. ¶ 14.)  Instead, Robinson may possess or apply for a driver's license, or own, purchase, rent, register or operate a vehicle with the "explicit permission" of his parole officer.[7]  (*See* Dkt. No. 57, Attach. 2 at 13.)  Accordingly, the imposition of the license and vehicle condition was related to the

---

[7] Defendants attempt to argue that, because Robinson is presently permitted to possess a driver's license, and has been for the last year, his equitable claim is moot.  (*See* Dkt. No. 75 at 2.)  The challenged action, however, is the imposition of the license and vehicle condition, not its enforcement.  Because the condition remains in place, and Robinson's ability to possess a driver's license and own, purchase, rent, register or operate a vehicle continues to be premised on the discretion of his parole officer, defendants' mootness argument fails.

governmental interests of ensuring public safety, monitoring parolees and reducing recidivism, and was not arbitrary and capricious.  *See Birzon v. King*, 469 F.2d 1241, 1243 (2d Cir. 1972) (describing rehabilitation and public protection as "substantial" governmental interests).  Defendants motion is therefore granted as to Robinson's due process claim.  *See, e.g.*, *Walker*, 2012 WL 1160772, at *8.[8]

## B.    Equal Protection

"The Equal Protection Clause has traditionally been applied to governmental classifications that treat certain groups of citizens differently than others."  *Fortress Bible Church v. Feiner*, 694 F.3d 208, 221 (2d Cir. 2012).  Where the "classification neither involv[es] fundamental rights nor proceed[s] along suspect lines[, it] is accorded a strong presumption of validity" and "cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate

--------------------

[8] Robinson's claim is equally unavailing when framed as a substantive due process challenge.  Substantive due process protects individuals from governmental action which is arbitrary, outrageous, conscience-shocking or grossly abusive of governmental authority.  *See Hefferan v. Corda*, No. 10-4641-cv, 2012 WL 4465320, at *2 (2d Cir. Sept. 28, 2012).  For the reasons articulated above, the imposition of the license and vehicle condition does not violate the protections of substantive due process.

governmental purpose." *Heller v. Doe ex rel. Doe*, 509 U.S. 312, 319-20 (1993) (internal citations omitted).  Because "[p]arolees do not constitute a suspect or quasi-suspect class," classification involving parolee status need only satisfy rational basis review.  *See Bratton v. N.Y. State Div. of Parole*, No. 05-CV-950, 2008 WL 1766744, at *11 (N.D.N.Y. Apr. 14, 2008).  An individual may also advance a "class of one" theory where it is alleged that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Although Robinson does not indicate under which theory he brings his equal protection claim, the crux of his argument is that the blanket imposition of the license and vehicle condition on Queens III parolees, while parolees outside of Queens III are not burdened by such a condition,[9]

_____

[9] The court notes that, while defendants do not explicitly attack Robinson's contention that Queens III is the only parole bureau in the state that imposes such a condition, it appears as though Robinson was subjected to a similar condition in December 2011 while under the supervision of the Queens I bureau. (*See* Dkt. No. 75, Attach. 1 ¶¶ 7-8; Dkt. No. 75, Attach. 1 at 9.)  In undertaking its equal protection analysis, however, the court, as it must, "construes all evidence in the light most favorable to [Robinson], drawing all inferences and resolving all ambiguities in his favor."  *Amore v. Novarro*, 624 F.3d 522, 529 (2d Cir. 2010).

represents unequal treatment under the law.  (*See* Dkt. No. 36 ¶ 30; Dkt. No. 43 at 25-26.)  This claim fails under either theory of equal protection liability.

The policy at issue is not a state-wide decree that dictates different treatment between parolees under the supervision of the Queens III bureau and all other parolees.  Instead, it is a policy which, with the exception of "extremely limited circumstances," is applied by the Queens III bureau equally to all parolees under its supervision, (Defs.' SMF ¶¶ 9-10), and, as such, utilizes no classification.  Even if the uniform imposition of the special condition is construed as creating a de facto classification between Queens III parolees and non-Queens III parolees, there is undoubtedly a "reasonably conceivable state of facts that could provide a rational basis" for heightened supervision by the Queens III bureau, as opposed to other parole bureaus, in its efforts to further the legitimate governmental interests of public safety, rehabilitation and reduced recidivism.  *Heller*, 509 U.S. at 320 (stating that, under rational basis review, the purpose or rationale supporting the categorization need not be articulated, and the classification "must be upheld . . . if there is any reasonably conceivable state of facts that could provide a rational basis for [it]" (internal quotation marks and

citations omitted)); *see also United States ex rel. Buonoraba v. Comm'r of Corr.*, 316 F. Supp. 556, 566 (S.D.N.Y. 1970) ("The state has a free ha[n]d in dividing its territory into areas for the performance of public functions, and so long as all citizens in an area designated are treated equally, no denial of equal protection occurs, even if in a neighboring area the function is performed differently.")  Under either theory of liability, the existence of such a rational basis is fatal to Robinson's equal protection claim.[10]  *See Vill. of Willowbrook*, 528 U.S. at 564; *Heller*, 509 U.S. at 319-20.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that defendants' motion for summary judgment (Dkt. No. 57) is **GRANTED**; and it is further

**ORDERED** that Robinson's Complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case; and it is further

---

[10] To the extent, if at all, that Robinson's claim can be construed as advancing a disparate impact theory of liability, it too fails for lack of allegation, or proof, of discriminatory intent.  *See Collier v. Barnhart*, 473 F.3d 444, 449 (2d Cir. 2007) (holding that, in bringing an equal protection claim, "disparate impact is only a starting point, and petitioner must prove discriminatory purpose") (internal quotation marks and citations omitted)).

**ORDERED** that the Clerk provide a copy of this Memorandum-

Decision and Order to the parties by regular and certified mail.

**IT IS SO ORDERED.**

February 28, 2013
Albany, New York

Gary L. Sharpe
Gary L. Sharpe
Chief Judge
U.S. District Court